## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| John Doe, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>      v.<br><br>Brown University,<br><br>                         Defendant. | No.<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     NATURE OF ACTION ................................................................................................1

II.    JURISDICTION AND VENUE ...............................................................................2

III.   PARTIES ....................................................................................................................3

IV.   CLASS ACTION ALLEGATIONS .........................................................................4

V.    FACTS ........................................................................................................................8

      A.     Background ....................................................................................................8

      B.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure ..............10

      C.     Defendant's Refusal To Issue Tuition, Fee, And Room And Board Refunds .......13

VI.   CAUSES OF ACTION ............................................................................................15

      COUNT I  BREACH OF CONTRACT .................................................................15

      COUNT II  UNJUST ENRICHMENT ..................................................................16

      COUNT III  CONVERSION .................................................................................17

PRAYER FOR RELIEF ....................................................................................................18

JURY DEMAND ...............................................................................................................18

Plaintiff, John Doe, individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendant Brown University ("Brown"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campus(es), Defendant continues to charge for tuition, fees, and room and board as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

010920-15/1260650 V1

3.     While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably and as required by the law. Defendant has refused to provide any tuition or fee refund for the Spring 2020 semester. Defendant only offered minimal adjustments for housing and meal plans.

4.     As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services paid, did not receive the benefits of in-person instruction, and are seeking reimbursement of tuition, fees, and room and board on a pro-rata basis. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a resident of Rhode Island, and Defendant is a citizen of Rhode Island. Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Rhode Island, where this action is originally being filed, and therefore diversity

of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). The total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

6.      Venue is appropriate in this District because Defendant is located within the District of Rhode Island. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.     PARTIES

7.      Plaintiff John Doe is a resident of the State of Rhode Island. Plaintiff is enrolled as a full time student for the Spring 2020 academic term at Defendant. Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, and costs assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and services that he will not receive, including on-campus education, facilities, services and activities.

8.      Plaintiff enrolled at Brown University to obtain the full experience of live, in-person courses and direct interactions with instructors and students, facilitated by small class sizes. Plaintiff chose Brown due to the accessibility of professors and camaraderie with his classmates in both the classroom and on campus.

9.      On or about March 12, 2020, Defendant informed Plaintiff that classes would be cancelled for two weeks to allow professors to transition to online-only classes. Courses would resume on March 30, 2020 and be conducted online for the remainder of the semester.

10.      As a result, Plaintiff's coursework has completely transitioned to online learning. The transition was disruptive and the academic rigor of courses has significantly decreased. For example, one course was primarily focused on student presentations and class-wide discussion, but it is now only video recorded lectures with limited interaction from professors or classmates.

-3-

Plaintiff enrolled in one course for the lab experience but he is unable to utilize the specialized equipment only accessible on campus. Another course recommends office hours with teaching assistants for success in completing difficult assignments, but technical difficulties and time zone issues have frustrated effective teaching assistant meetings. Plaintiff is unable to interact with professors and classmates as often and with the same depth as in-person courses.

11.     Additionally, Plaintiff was looking forward to many of Brown's spring events, club activities, and numerous guests and distinguished speakers on campus including a lecture by Former President Bill Clinton. Plaintiff was looking forward to attending the annual Spring Weekend concert which is largely paid for by the student activity fee.

12.     Defendant Brown University is an institution of higher learning located in Providence, Rhode Island. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

### IV.     CLASS ACTION ALLEGATIONS

13.     Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

010920-15/1260650 V1

14. The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

15. Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records, however, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

16. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

17. Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

18. Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.      Whether Defendant engaged in the conduct alleged;

b.      Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.      Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d.      Whether Defendant violated the common law of unjust enrichment;

e.      Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

f.      The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

19.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

20.     Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

21.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class

actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

22.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

23.     In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

24.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

25.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## V.     FACTS

**A.     Background**

26.     Founded in 1764, Brown University is the seventh-oldest institution of higher education in the United States. Brown has a current enrollment of approximately 10,257 full-time undergraduate, graduate, and professional students, with 7,043 undergraduate students, across 80 Bachelor's Degree concentration programs.

27.     As of June 30, 2019, Defendant's endowment totaled $4.2 billion. In fiscal year 2019, endowment distributions comprised 14 percent of the university's operating budget.

28.     Fiscal Year 2019 was the largest fundraising year in Brown's history—with more than 31,000 individual donors giving $420.6 million.[2] Donors gave a record $45.8 million in support of the Annual Fund, which provides unrestricted financial support for University life ranging from financial aid, student research, service projects, and student experiences.[3] Additionally, the *BrownTogether* fundraising campaign raised $2.26 billion as of December 5, 2019.[4]

29.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see, e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

30.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

---

[2] https://brunonia.brown.edu/giving/article/record-giving-2019.

[3] *Id.*

[4] https://brunonia.brown.edu/giving/article/campaign-goals-and-progress.

31.     A few examples of such efforts to promote that experience follow: Brown is celebrated for its "flexible yet rigorous Open Curriculum"—where students have freedom to personalize their own course of study "surrounded by a community of world-class scholars invested in their success." Brown boasts 80+ undergraduate concentrations, 40 academic programs, and 7:1 student to faculty ratio.

32.     Brown students enjoy a scenic campus and the "classic New England College experience" where students "gather in dorm common rooms, in on-campus cafes, and in their favorite lounges to talk passionately about what they've learned."

33.     Brown promotes non-academic opportunities as part of the university experience recognizing "[m]any memorable moments at Brown happen outside the classroom." Brown's 400+ student organizations, events, and on-campus spaces "encourage all students, faculty and staff to find a sense of belonging, build relationships across differences and develop leadership and life skills to thrive intellectually and personally at Brown and beyond." The campus in Providence, Rhode Island is "known for its restaurants, innovative arts scene, youthful energy and unpretentious vibe."

34.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

35.     For the Spring term 2020, Defendant assesses the following: $28,556 for tuition, $143 activity fee, $32 recreation fee, and a $471 health services fee.

36.     The room and board fees were $4,710 or a $443.50 non-resident/commuter fee.

37.     The meal plan fees include $2,956 for a 20 Meal/Flex 460 plan or 20 Kosher/Halal plan, $2,783 for a 14 Meal/Flex 330 plan or 14 Kosher/Halal plan, $2,524 for a 10 Meal/Flex 240 plan, $2,288 for a 7 Meal plan, or $943 for Off Campus.

-9-

38.     Annual fees included a health insurance fee of $3,846 if the student does not have health insurance.

**B.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

39.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

40.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

41.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

42.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

43.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

44.     As it relates to this suit, on March 6, 2020, University President Christina Paxson announced new University event and travel policies to the campus community.[5] Effective March 9, 2020, all University events with 100 attendees or more, excluding courses, must be postponed,

---

[5] https://covid.brown.edu/news/2020-03-06/events-travel.

-10-

cancelled, or offered virtually. Additionally, "anyone returning to the U.S. after travel to China, Iran, Italy and South Korea will be required to self-isolate in a U.S. location away from campus for at least 14 days before returning to Brown."

45.    On March 9, 2020, Rhode Island Governor Gina M. Raimondo declared a state of emergency. On the same date, Vice President for Campus Life Eric Estes and Executive Director of Health and Wellness Vanessa Britto informed the campus community that three Brown students were being tested for COVID-19 and self-isolating. On March 11, 2020, it was announced all three students tested negative for COVID-19.

46.    On March 12, 2020, President Paxson made the decision to move all academic instruction for all undergraduate and graduate students to remote learning. Undergraduate students living in on-campus or in Brown-owned properties were asked to vacate their residences as soon as possible and no later than March 22, 2020 for the rest of the semester.[6] Exceptions would be made for students who could not leave due to international travel restrictions or other extraordinary circumstances. Online classes would resume on March 30, 2020, after a two-week break. President Paxson acknowledged the "best part of Brown is the interactions we have with each other, in classrooms, dormitories and around campus."[7]

47.    On March 14, 2020, the University reported a positive case of COVID-19. Provost Richard M. Locke announced students should leave campus as soon as possible and changed the date students must vacate undergraduate housing from March 22, 2020 to March 17, 2020.[8] This change resulted in extreme stress for students on campus and significant hardship for families rebooking travel.

---

[6] https://covid.brown.edu/news/2020-03-12/remote-learning.

[7] *Id.*

[8] https://covid.brown.edu/news/2020-03-14/case.

-11-

48.    On March 28, 2020, Governor Raimondo issued Executive Order 20-13, a state stay-at-home order through April 13, 2020.[9] On April 7, 2020, Governor Raimondo stated the stay-at-home order would be extended through May 8, 2020.[10]

49.    Though the reasons for such closures are justified the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

50.    College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

51.    For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[11]

52.    As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a

---

[9] https://governor.ri.gov/documents/orders/Executive-Order-20-13.pdf (last visited April 29, 2020).

[10] https://turnto10.com/news/local/raimondo-tells-ri-to-prepare-for-surge-of-coronavirus-cases-urges-public-to-stay-home(last visited April 29, 2020).

[11] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[12]

53.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[13]

C.      **Defendant's Refusal To Issue Tuition, Fee, And Room And Board Refunds**

54.     Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing.

---

[12] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

[13] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

55.     Defendant has refused to issue refunds for the Spring 2020 term because coursework is still being taught online.

56.     Defendant has requested students vacate student housing, barring extenuating circumstances such as international travel restrictions. Many students have followed the Defendant's instructions and moved off campus and left Brown-owned residences. When students follow the Defendant's instructions, they are no longer receiving room and board services. Likewise, when student services are curtailed or eliminated, students should not be forced to pay for services they cannot use.

57.     Defendant has agreed to prorate some fees and costs, but not equal to the number of days the student has paid for room and board for the remaining Spring term. On April 2, 2020, Student Financial Services informed students they would receive a prorated credit for room and meals based on the student's individual room and meal charges; 50% remaining in the Spring Semester; and for students with financial aid, a prorated calculation based on individual parent contribution and the standard annual cost of attendance.[14] If the room and board created a credit balance on the student account, the credit will be applied to the next semester's charges.

58.     Even if a student's financial aid only applies to tuition, they will only receive refunds for room and board proportional to their total cost of attendance. For example, if a student receives 70% of total cost of attendance as financial aid, then only 30% of the remaining amount of room and board expenses will be refunded under Defendant's plan. Defendant is denying full refunds or even full prorated refunds to those students that need it most through its flawed room and board refund plan.

---

[14] https://www.brown.edu/about/administration/bursar/.

59.     Defendant also agreed to provide a 50% credit for the Spring 2020 recreation fee that will be applied to each student's account.

60.     However, Defendant has refused to give a prorated refund for fees paid for other services students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus and return home.

## VI.     CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

61.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

62.     Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

63.     Under their contracts with Defendant, Plaintiff and the members of the class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

64.     Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

65.     However, Defendant has breached such contracts, failed to provide those services, and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or has evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

66.     Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

67.     Plaintiff and the Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

68.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

69.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

70.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

71.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

72.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class with full knowledge and awareness that because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

73.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

-16-

74.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board

<strong>COUNT III</strong>

<strong>CONVERSION</strong>

75.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

76.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

77.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant as well as barred Plaintiff from Defendant's facilities.

78.     Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

79.     Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

80.     Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for

-17-

rights, benefits, services and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.      Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.      Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.      Actual damages and all such other relief as provided under the law;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

010920-15/1260650 V1

Dated: April 30, 2020                          Respectfully submitted,

                                               By: /s/Stephen M. Prignano
                                               Stephen M. Prignano (3649)
                                               McIntyre Tate LLP
                                               50 Park Row West, Suite 109
                                               Providence, Rhode Island 02903
                                               T: (401) 351-7700
                                               F: (401) 331-6095
                                               sprignano@mcintyretate.com


                                               Steve W. Berman (*Pro Hac Vice* Forthcoming)
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               1301 Second Avenue, Suite 2000
                                               Seattle, WA 98101
                                               T: (206) 623-7292
                                               F: (206) 623-0594
                                               steve@hbsslaw.com

                                               Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
                                               Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               455 N. Cityfront Plaza Dr., Suite 2410
                                               Chicago, IL 60611
                                               T: (708) 628-4949
                                               F: (708) 628-4950
                                               dank@hbsslaw.com
                                               whitneys@hbsslaw.com

                                               *Attorneys for Plaintiff, individually and on behalf of
                                               all others similarly situated*